Case No: 20-13477-J

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

JEFFREY A. COCHRAN,
*Appellant,*
v.
THE PENN MUTUAL LIFE INSURANCE COMPANY, et al.
*Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION
DISTRICT COURT DOCKET NO: 1:19-CV-00564-JPB

---

## INITIAL BRIEF OF APPELLANT JEFFREY A. COCHRAN

---

David A. Bain
Law Offices of David A. Bain, LLC
1230 Peachtree Street, NE, Suite 1050
Atlanta, GA 30309

Roy E. Barnes
James Cameron Tribble
Barnes Law Group, LLC
31 Atlanta Street
Marietta, GA 30060

James M. Evangelista
David J. Worley
Kristi Stahnke McGregor
Evangelista Worley, LLC
500 Sugar Mill Road, Suite 245A
Atlanta, GA 30350

Jay Forbes Hirsch
Kimberly J. Johnson
Michael L. McGlamry
Pope McGlamry
3391 Peachtree Road, NE, Suite 300
Atlanta, GA 30326

Wade H. Tomlinson III
Michael P. Morrill
Pope McGlamry
1200 6th Avenue
Columbus, GA 31901

*Attorneys for Appellant Jeffrey A. Cochran*

## <u>CERTIFICATE OF INTERESTED PERSONS AND</u>
## <u>CORPORATE DISCLOSURE STATEMENT</u>

Appellant Jeffrey A. Cochran, individually and on behalf of all others similarly situated, submits this list pursuant to Eleventh Circuit Rule 26.1-2 (a), which includes the trial judge, and all attorneys, persons, associations of persons, firms, partnerships or corporations that have an interest in the outcome of this review:

1. Bain, David A., Counsel for Appellant

2. Barnes Law Group, LLC, Counsel for Appellant

3. Barnes, Roy E., Counsel for Appellant

4. Batten, Sr., The Honorable Timothy C., United States District Court for the Northern District of Georgia, Judge

5. Boulee, The Honorable J.P., United States District Court for the Northern District of Georgia, Judge

6. Class consisting of all Georgia residents who were customers of Hornor, Townsend & Kent, LLC and who purchased an individual variable deferred annuity contract or who received a certificate to a group variable deferred annuity contract issued by The Penn Mutual Life Insurance Company, or who made an additional investment through such a contract, from February 1, 2013 through the present (the "Class Period") that was used to fund a contributory

retirement plan or arrangement qualified for favorable tax treatment pursuant to sections 401, 403, 408, 408A, or 457 of the Internal Revenue Code.

7.  Cochran, Jeffrey, Appellant

8.  Councill & Gunnemann, LLC, Counsel for Appellees

9.  Councill, Stephen D., Counsel for Appellees

10. Evangelista, James M., Counsel for Appellant

11. Evangelista Worley, LLC, Counsel for Appellant

12. Gunnemann, Joshua P., Counsel for Appellees

13. Hirsch, Jay, Counsel for Appellant

14. Hornor, Townsend & Kent, LLC, Appellee

15. Johnson, Kimberly J., Counsel for Appellant

16. Kenneally, Michael E., Counsel for Appellees

17. Law Offices of David A. Bain, LLC, Counsel for Appellant

18. Lavelle, Jr., John P., Counsel for Appellees

19. McGlamry, Michael L., Counsel for Appellant

20. McGregor, Kristi Stahnke, Counsel for Appellant

21. McNally, Laura H., Counsel for Appellees

22. Morrill, Michael P., Counsel for Appellant

23. Pope McGlamry, P.C., Counsel for Appellant

24. Roberts, Cameron B., former Counsel for Appellees

25. Rogers & Hardin LLP, former Counsel for Appellees

26. Sonnenfeld, Marc J., Counsel for Appellees

27. The Penn Mutual Life Insurance Company, Appellee

28. Tomlinson, III, Wade H., Counsel for Appellant

29. Tribble, J. Cameron, Counsel for Appellant

30. Worley, David J., Counsel for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument.  This appeal presents an issue on which there is a division among Circuit Courts of Appeals, and on which the District Court's ruling differs from those of other district courts in this Circuit. Appellant believes that oral argument will assist the Court in its analysis of this issue.

## <u>TABLE OF CONTENTS</u>

**STATEMENT OF JURISDICTION**........................................................................1

**STATEMENT OF THE ISSUES**...........................................................................2

**STANDARD OF REVIEW**....................................................................................2

**STATEMENT OF THE CASE**.............................................................................3

   A.   Nature of the Case ..........................................................................................3

   B.   Statement of Facts...........................................................................................7

**SUMMARY OF ARGUMENT**...........................................................................10

**ARGUMENT**........................................................................................................11

The District Court erred in holding that the Securities Litigation Uniform
Standards Act ("SLUSA") precludes state law claims for breach of fiduciary duty
that do not allege or require a misrepresentation or omission of a material fact....11

   A.   The District Court's Order is Contrary to the Plain Language of SLUSA ...11

   B.   The District Court's Finding on Preclusion Deviates from Binding Precedent
       and Other Authority Within This Circuit ......................................................15

   C.   The District Court's Decision is Contrary to SLUSA Precedents from Other
       Circuits...........................................................................................................23

   D.   The District Court's Order Nullifies the Georgia Supreme Court's Holding
       in *Holmes v. Grubman* ..................................................................................33

**CONCLUSION**....................................................................................................37

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                     **Page(s)**

*Am. Dental Ass'n v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010) ...........................................................13

*Antietam Indus., Inc. v. Morgan Keegan & Co., Inc.*, 6:12-CV-1250-ORL-36,
  2013 WL 1213059 (M.D. Fla. Mar. 25, 2013) ......................................19

*Atkinson v. Morgan Asset Management, Inc.*,
  658 F.3d 549 (6th Cir. 2011) ...............................................................28

*Banc of Am. Sec. LLC v. Stott*,
  04-81086-CIV, 2005 WL 8156027 (S.D. Fla. Aug. 30, 2005)...........................19

*Behlen v. Merrill Lynch*,
  311 F.3d 1087 (11th Cir. 2002) .................................................. 17, 21, 22, 23, 29

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) ....................................13

*Bilal v. Geo Care, LLC*,
  No. 16-11722, 2020 WL 6864637 (11th Cir. Nov. 23, 2020)..............................14

*Brink v. Raymond James & Associates, Inc.*,
  892 F.3d 1142 (11th Cir. 2018) .........................................................16

*Brown v. Calamos*,
  664 F.3d 123, (7th Cir. 2011) ..................................................... 24, 25

*CBS Inc. v. PrimeTime 24 Joint Venture*,
  245 F.3d 1217 (11th Cir. 2001) .........................................................13

*Dudek v. Prudential Sec., Inc.*,
  295 F. 3d 875 (8th Cir. 2002) .......................................... 24, 27, 28, 29

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976)...................................................................... 12, 16

*Florida Auto. Joint Underwriting Ass'n v. Milliman, Inc.*, 4:06-CV-00546-SPM-
WCS, 2007 WL 9735054 (N.D. Fla. Feb. 15, 2007)............................................19

*Freeman Investments, L.P. v. Pacific Life Ins. Co.*,
704 F.3d 1110 (9th Cir. 2013) ...................................................................... 25, 26

*Gochnauer v. A.G. Edwards & Sons, Inc.*,
810 F.2d 1042 (11th Cir. 1987) ................................................................. passim

*Goldberg v. Bank of America, N.A.*,
846 F. 3d 913 (7th Cir. 2017) ................................................................. 24, 25, 26

*Graham v. R.J. Reynolds Tobacco Co.*,
857 F.3d 1169 (11th Cir. 2017) (en banc............................................................3

*Griffin v. Fowler*,
260 Ga. App. 443, 579 S.E.2d 848 (2003) .........................................................20

*Grund v. Delaware Charter Guarantee and Trust Co.*,
788 F. Supp. 2d 226 ....................................................................................... 30, 3`

*Gwin v. Nationwide Life Ins. Co.*,
2008 WL 8945610 (N.D. Ala., Apr. 15, 2008)...................................................21

*Hines v. ESC Strategic Funds, Inc.*,
1999 WL 1702503 (M.D. Tenn. Sept. 17, 1999)................................................29

*Holmes v. Grubman*,
286 Ga. 636 (2010) ..................................................................................... passim

*Holtz v. JPMorgan Chase Bank, N.A.*,
846 F. 3d 928 (7th Cir. 2017) ............................................................................25

*In re Kingate Mgmt. Ltd. Lit.*,
784 F.3d 128 (2d Cir. 2015) ........................................................................ 25, 26

*LaSala v. Bordier et Cie*,
519 F.3d 121 (3d Cir. 2008) ........................................................................ 25, 27

*Lawson-ross v. Great Lakes Higher Educ. Corp.*,
   955 F.3d 908 (11th Cir. 2020) ................................................................3

*Mathis v. Hammond*,
   268 Ga. 158 (1997) ...............................................................................34

*McEachern v. Equitable Life Assurance*,
   2001 WL 747320 (N.D. Ala. June 15, 2001) ................................. 20, 29

*MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.*,
   216 F. Supp. 2d 251 .............................................................................30

*Merrill Lynch v. Dabit*,
   547 U.S. 71 (2006)................................................................................16

*Miller v. Nationwide Life Ins. Co.*,
   391 F.3d 698 (5th Cir. 2004) ...............................................................24

*Norman v. Salomon Smith Barney, Inc.*,
   350 F. Supp. 2d 382 (S.D.N.Y. 2004) .............................. 19, 20, 31, 32

*Paru v. Mutual of America Life Ins. Co.*,
   2006 WL 1292828 (S.D.N.Y., May 11, 2006) .....................................30

*Roland v. Green*,
   675 F.3d 503 (5th Cir. 2012) ...............................................................18

*Rowinski v. Salomon Smith Barney, Inc.*,
   398 F.3d 294 (3d Cir. 2005) ................................................................16

*Santa Fe Indus. v. Green*,
   430 U.S. 462, 97 S.Ct. 1292 (1977)............................................... 10, 16

*Segal v. Fifth Third Bank, N.A.*,
   581 F.3d 305 (6th Cir. 2009) ...............................................................24

*Seminole Tribe of Florida v. Wells Fargo Bank, N.A.*, 16-60414-CIV-WPD,
   2016 WL 4433651 (S.D. Fla. May 31, 2016)................................. 22, 23

*Snow v. DirecTV, Inc.*,
  450 F.3d 1314 (11th Cir. 2006) ............................................................3

*Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc*.,
  332 F. 3d 116 (2d Cir. 2003) .............................................................30

*Stephens v. Gentilello*,
  853 F. Supp. 2d 462 (D.N.J. 2012).....................................................30

*Trustees of Jesse Parker Williams Hosp. v. Nisbet*,
  191 Ga. 821 (1941) .............................................................................34

*Walling v. Beverly Enters.,*
  476 F.2d 393 (9th Cir. 1973) ..............................................................26

*Webster v. New York Life Ins. and Annuity Corp*.,
  386 F. Supp. 2d 438 (S.D.N.Y. 2005) .................................................31

*Whitehead v. BBVA Compass Bank*, 2:18-CV-01130-AKK,
  2019 WL 1376712 (N.D. Ala. Mar. 27, 2019) ....................................20

*Wilchombe v. TeeVee Toons, Inc.,*
  555 F.3d 949 (11th Cir. 2009) ............................................................17

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc*.,
  341 F. Supp. 2d 258 (S.D.N.Y. 2004) .......................................... 28, 29

**Statutes**

15 U.S.C. § 78bb ....................................................................................11

15 U.S.C. § 78bb(f)(1) ...........................................................................11

15 U.S.C. § 78bb(f)(i)(A) ........................................................... 11, 12, 17

15 U.S.C. § 78bb(f)(i)(A) and (B) ..........................................................12

15 U.S.C. § 78j ......................................................................................12

28 U.S.C. § 1291 .....................................................................................2

28 U.S.C. § 1332(a) ...............................................................................1

28 U.S.C. § 1332(d)(2) .........................................................................1

O.C.G.A. § 23-2-58 ..............................................................................35

**Rules**

Fed. R. Civ. P. 9(b) ..............................................................................14

**Other Authorities**

Restatement (2d) of Agency § 13 .........................................................35

Restatement (2d) of Agency § 425 .......................................................35

Restatement (2d) of Agency §§ 387-398 ....................................... 12, 16

Restatement (3rd) of Agency § 8.01 .......................................................4

Restatement (3rd) of Agency § 8.06(2) .................................................34

## STATEMENT OF JURISDICTION

The United States District Court for the Northern District of Georgia (the "District Court") had original jurisdiction over the subject matter of this Class action pursuant to 28 U.S.C. § 1332(d)(2), as the claims of the Class members are in excess of $5,000,000 in aggregate, exclusive of interest and costs, and at least one member of the Class is a citizen of a state different than the Defendants. (Docket Entry ("Doc.") 27 at 8, ¶ 12). In addition, the District Court had original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a), as the amount in controversy exceeds $75,000, exclusive of interest and costs, and the Plaintiff is a citizen of a state different than the Defendants. (Doc. 27 at 8, ¶ 12). The District Court also had personal jurisdiction over the Defendants because they transacted business in Georgia, had purposely availed themselves of the laws of Georgia, and because a substantial part of the events giving rise to Plaintiff's causes of action occurred in Georgia. (Doc. 27 at 8, ¶ 13).

On August 12, 2020, the District Court's Order ("Order") (Doc. 57) granted in part Defendants' Motion to Strike the Class Action Allegations and Compel Arbitration or, in the Alternative, Dismiss Plaintiff's Amended Class Action Complaint (Doc. 33) and closed the case. On September 10, 2020, Plaintiff timely filed his notice of appeal ("Notice of Appeal"). (Doc. 58.)

-1-

The Court has jurisdiction over this appeal from the Order of the District Court pursuant to 28 U.S.C. § 1291, which confers jurisdiction from a final order of a district court. *See also* the parties' responses to this Court's Jurisdictional Question, filed Nov. 19, 2020 (Appellees) and Nov. 20, 2020 (Appellant).

## STATEMENT OF THE ISSUES

1. Whether the District Court erred in holding that the Securities Litigation Uniform Standards Act ("SLUSA") precludes state law claims for breach of fiduciary duty that do not allege or require a misrepresentation or omission of a material fact.

   a. The District Court's Order is Contrary to the Plain Language of SLUSA

   b. The District Court's Finding of Preclusion Deviates from Binding Precedent and Other Authority Within This Circuit

   c. The District Court Decision is Contrary to SLUSA Precedents from Other Circuits

   d. The District Court's Order Nullifies the Georgia Supreme Court's Holding in *Holmes v. Grubman*

## STANDARD OF REVIEW

The District Court's Order challenged here granted Defendants' motion to dismiss and closed the case. This Court reviews *de novo* the district court's grant of

a motion to dismiss for failure to state a claim and its determination as to whether federal law preempts a state law claim. *See Lawson-ross v. Great Lakes Higher Educ. Corp.*, 955 F.3d 908, 915 (11th Cir. 2020) (citing *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006) and *Graham v. R.J. Reynolds Tobacco Co.*, 857 F.3d 1169, 1181 (11th Cir. 2017) (en banc)).

## STATEMENT OF THE CASE

### A. Nature of the Case

Utilizing a corporate structure that often foments self-dealing and other conflicts of interest, Appellee Hornor, Townsend & Kent, LLC ("HTK") is a "captive" brokerage firm, wholly owned and controlled by Appellee The Penn Mutual Life Insurance Company ("Penn Mutual"). Doc. 27 at 10-11, ¶¶ 17, 22. Appellant Jeffrey Cochran was a customer of HTK; his account was a rollover IRA, which consisted entirely of tax-qualified funds. Doc. 27 at 2, 4-6, ¶¶ 2, 6-8. Mr. Cochran sued HTK and Penn Mutual, alleging that HTK breached its fiduciary duties by selling him a Penn Mutual variable annuity that pays extraordinarily high fees to both HTK and Penn Mutual in exchange for tax treatment that cannot benefit Mr. Cochran, depriving him of significant investment returns. Doc. 27 at 5-7, 29, ¶¶ 8, 10, 62. Mr. Cochran alleged in his Amended Complaint that HTK had an inherent and unwaivable conflict of interest and that its sale of the Penn Mutual variable annuity in a tax-qualified account favored HTK's interests over Mr.

Cochran's, thereby breaching HTK's fiduciary duty as set out in *Holmes v. Grubman*, 286 Ga. 636, 643 (2010). Doc. 27 at 4, ¶¶ 5-6.[1]

In *Holmes,* the Georgia Supreme Court held that a brokerage firm owes fiduciary duties to its customers, meaning HTK had and has a duty to put the interests of its clients above its own interest. *See Holmes*, 286 Ga. at 643.[2] The *Holmes* court answered a certified question from the Second Circuit Court of Appeals, to wit: whether "a brokerage firm owe[s] a fiduciary duty to the holder of a non-discretionary account" under Georgia law. A unanimous Georgia Supreme Court answered in the affirmative, concluding that "[t]he broker will generally have a heightened duty, even to the holder of a non-discretionary account, *when recommending an investment* which the holder has previously rejected or *as to which the broker has a conflict of interest*." 286 Ga. at 643 (emphasis added). HTK's practice of selling Penn Mutual variable annuities to its clients who are investing tax-qualified funds constitutes just such a conflict of interest, and the practice cannot pass muster when HTK's conduct is held up to the fiduciary standard.

---

[1]    The Amended Complaint charges Penn Mutual with procuring (or aiding and abetting) this breach of HTK's fiduciary duties.  Doc. 27 at 33-34, ¶¶ 76-81.

[2]    *See* Restatement (3rd) of Agency § 8.01 ("An agent has a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship.").

Appellee HTK targets sales of variable annuities to persons like Mr. Cochran seeking to invest tax-qualified retirement funds for one simple reason: HTK makes more money selling variable annuities than it makes selling other products. Doc. 27 at 2, 4, ¶¶ 2, 6. This straightforward conflict is at the heart of the case. The total recurring annual expenses for Mr. Cochran's annuity are 3.56%. Doc. 27 at 14, ¶ 29. As a result, huge amounts of money that should have been deployed for Mr. Cochran's benefit have instead been siphoned off – by his fiduciary – in the form of inappropriate fees. These fees make a huge difference in investment returns over the course of many years of saving and investing for retirement. Doc. 27 at 5-7, ¶¶ 8-10.[3] This class action seeks to recover damages caused by HTK's breach of its fiduciary duties by selling variable annuity contracts -- specifically those issued by

---

[3] The Rule of 72 provides a useful illustration of the devastating impact these fees have over time. The Rule of 72 is a shorthand mathematical formula that calculates approximately how long it will take for money to double at a given compounding rate of return. Take the rate of return, divide that number into 72, and the result is the number of years it will take for money to double. *See* Doc. 34, at 5, n.6 (citing Joshua M. Brown, The Reformed Broker, "Double Your Money," available at https://thereformedbroker.com/2019/03/07/double-your-money-2/ .) The S&P 500's average rate of return over the past fifty years, if dividends are reinvested, is approximately 10%. Adjusting that figure to account for cost of living increases (of, say, 3%) leaves a real return of approximately 7%. At that rate, retirement investments would double (in real, inflation-adjusted terms) roughly every ten years. But if fees are consuming 3% each year, the 7% return drops to 4%, and instead of doubling every ten years, it takes eighteen years; if fees are 4%, the 7% return drops to 3%, and it takes twenty-four years for money to double. *See* Doc. 34, at 5, n.6.

its corporate parent, Penn Mutual -- to customers like Mr. Cochran who cannot benefit from them.

This appeal arises from the District Court's August 12, 2020 Order (Doc. 57) that granted Defendants' Motion to Dismiss the claims of all absent class members, denied as moot Defendants' Motion to Strike those class allegations, granted Defendants' Motion to Compel Arbitration, and directed the Clerk to close the case. Despite the fact that Mr. Cochran did not allege and does not rely on any misrepresentations or omissions (Doc. 27 at 2, ¶ 1), the District Court nonetheless found that Mr. Cochran's fiduciary duty claim is actually a fraud claim in disguise, one precluded by SLUSA. Doc. 57 at 11, 14.[4] If the District Court is correct, there can be no way to state the claim for breach of fiduciary duty outlined in *Holmes v. Grubman* on behalf of a class. Further, under the District Court's reasoning, a brokerage firm can have no duty whatsoever short of fraud -- under Georgia law or that of any other state -- when providing recommendations or advice, because doing

---

[4]    Because the District Court applied SLUSA preclusion, the claims of all absent Class Members have been dismissed, while Mr. Cochran's individual claims survive. There is no dispute that Mr. Cochran's individual claims, if brought individually, would be subject to a FINRA arbitration clause. But there is also no dispute that the class claims must be brought in court. FINRA rules prohibit filing a class claim as a FINRA arbitration; that can only be done in court. FINRA Rule 12204 (available here: https://www.finra.org/arbitration-mediation/printable-code-arbitration-procedure-12000#12204); *see generally* Doc. 34 at 8-9 (discussing arbitration clause and Rule 12204); Doc. 33-1 at 11 (same).

so necessarily would involve "some type of misrepresentation or omission related to what [the brokerage firm] stated or did not state when providing recommendations and advice." Doc. 57 at 11. By that reasoning, SLUSA would preclude the holding in *Holmes* and every other state law that attempts to impose such a duty. Such a conclusion is unwarranted.

### B.  <u>Statement of Facts</u>

Jeffrey Cochran was formerly employed by J.A. Thomas & Associates, Inc. and had a 401(k) account there until the company was acquired and the plan terminated. (Doc. 27 at 9, ¶ 16.) Thereafter, he rolled those 401(k) funds into a rollover IRA, which is also tax-qualified. *Id.* HTK then sold Mr. Cochran a Penn Mutual deferred variable annuity, despite the use of tax-qualified funds. *Id.*[5] The total recurring annual expenses on Mr. Cochran's variable annuity were 3.56% (Doc. 27 at 14, ¶ 29), plus a surrender penalty, which impeded his ability to exit this product. (Doc. 27 at 9, ¶ 16.)[6]

---

[5]     Variable annuities are complex investment products; their defining features are tax advantages and high fees. Doc. 27 at 2, 4, ¶¶ 2, 6. The tax advantages are useless, however, for persons funding retirement plans (rollover IRAs, for example). Doc. 27 at 2, ¶ 2. Under the Internal Revenue Code, such retirement plans are already automatically tax deferred (also referred to as "tax-qualified") regardless of the investments placed in the plan. *Id.* Thus, Mr. Cochran and all other Class Members get no tax advantage and are left with unnecessarily high fees.

[6]     In addition to paying these recurring annual fees for more than six years, Mr. Cochran had to pay a (reduced) surrender charge of $13,149.89 simply to close his account, which he did in August of 2019. As noted in the Amended Complaint, this

Defendant HTK is a brokerage firm, a principal underwriter of the Penn Mutual annuity contracts, and, significantly, Penn Mutual's wholly-owned subsidiary, an arrangement known as a "captive" broker-dealer structure. (Doc. 27 at 10, ¶ 17).  In November 2012, Penn Mutual made the strategic decision to focus on the captive broker-dealer model for its variable annuity business (Doc. 27 at 11, ¶ 22), cutting down on the number of selling agreements with independent broker-dealers, going from 80 to 30. *Id.*  Penn Mutual's new plan was to focus on distribution of Penn Mutual's proprietary variable annuity products through HTK, its wholly-owned broker-dealer. *Id.* This captive structure creates many opportunities for self-dealing and other conflicts of interest, *id.*, and it has resulted in HTK selling expensive Penn Mutual annuities in lieu of more appropriate investments. (Doc. 27 at 9, ¶ 16.)

For example, the typical client who is sold an annuity by HTK pays approximately 3.5% per year in fees. (Doc. 27 at 13, ¶ 28.)  In most cases, 90% or more of these fees are ultimately paid to Penn Mutual and/or Penn Mutual subsidiaries. *Id.*; *see also* Doc. 27 at 14-16, ¶¶ 29-37 (describing various fees) and at 5-7, ¶¶ 8 and 10 (describing benefits inuring to Defendants to the detriment of Mr. Cochran).  In Mr. Cochran's account alone, these higher fees would likely have cost

surrender charge essentially exists to compensate the broker for selling the variable annuity in the first place. Doc. 27 at 5-6, 23-24, ¶¶ 8, n.1, 50-51.

him approximately $575,000 over a 20-year period relative to a garden-variety mutual fund portfolio.  (Doc. 27 at 21-22, ¶ 47.)

The problem is that a fiduciary is not allowed to behave this way, and *Holmes v. Grubman* makes it very clear that HTK is a fiduciary.  Moreover, the *Holmes* court makes clear that these fiduciary duties reside at the brokerage firm level, which means HTK cannot escape its responsibilities to its customers by raising questions about individual conversations and individual circumstances that are not germane to the claim.[7]  Mr. Cochran filed this case on behalf of a class of Georgia residents (1) who were HTK customers, (2) who purchased a Penn Mutual variable annuity, and (3) who did so using already tax-qualified funds.  (Doc. 27 at 29, ¶ 63.)  These three limiting factors are built into the class definition by design to limit class membership to only those individuals who have experienced the most egregious types of conflicts discussed by the *Holmes* court.  *See generally* July 14, 2020 Transcript of Oral Argument Proceedings at 15-16, 31-33 ("The -- basically what we've done here is define a class that constitutes the lowest-hanging fruit we can think of. And then against that low-hanging fruit, we're going to apply the *Holmes* duty, which is the highest duty under the law. And at some point they're going to cross. No one is

---

[7]    The exact language of the certified question was "Under Georgia law, does a brokerage firm owe a fiduciary duty to the holder of a non-discretionary account?" *Holmes*, 286 Ga. 636.

saying exactly where that line is, but the low-hanging fruit combined with the highest duty known to the law, at some point it becomes a problem.").

## SUMMARY OF ARGUMENT

Under Georgia law, a brokerage firm owes fiduciary duties to its customers. *Holmes v. Grubman*, 286 Ga. 636, 643 (2010). "Actions contrary to the duties of loyalty and care are remedied by giving the beneficiary of the relationship the right to recover for the fiduciary's breach." *Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042, 1049 (11th Cir. 1987). Simply stated, a fiduciary has a duty to put the interests of his client ahead of his own. But, "[f]raud is not the same as breach of fiduciary duty." *Id*. In *Gochnauer*, this Court explained at length the differences between the federal and state securities laws. *See generally* 810 F.2d at 1046-50 ("The common law of fiduciary obligation is still intact"). In contrast to the federal securities laws, which are built around the law of fraud and deceit, the fiduciary duties at issue here have as their foundation the law of agency and trusts. Not only are there important differences between the federal and state securities regulatory schemes, but the two were always meant to complement one another. *See Santa Fe Indus. v. Green*, 430 U.S. 462, 479, 97 S. Ct. 1292, 1304 (1977).

This case presents the question of whether this is still true – whether the "common law of fiduciary obligation is still intact." The District Court's Order essentially treats SLUSA—the Securities Litigation Uniform Standards Act--as a

Congressional repeal of these cases' holdings, one that authorizes district courts to recast a complaint's allegations in order to do precisely what these two cases took pains to avoid: to "federalize" state law claims for breach of fiduciary duty. However, Congress has done no such thing. SLUSA applies to preclude state law claims only in cases with allegations of "a misrepresentation or omission of a material fact in connection with the purchase or sale of covered security." 15 U.S.C. § 78bb(f)(i)(A). Mr. Cochran's Amended Complaint makes no such allegations.

Further, courts from other circuits have viewed similar cases through a variety of analytical frameworks, including 1) a review of the substance and gravamen of the complaint; 2) considering whether the issue of fraud will arise in the litigation; and 3) whether proof of a misrepresentation or omission of a material fact is a necessary element of the claim. None of these tests require a finding of preclusion, and this Court should decline to adopt a binding rule that might erase any class-wide breach of fiduciary duty claims arising in connection with a sale of securities.

## **ARGUMENT**

**The District Court erred in holding that the Securities Litigation Uniform Standards Act ("SLUSA") precludes state law claims for breach of fiduciary duty that do not allege or require a misrepresentation or omission of a material fact.**

### A. **The District Court's Order is Contrary to the Plain Language of SLUSA**

The pertinent section of SLUSA is 15 U.S.C. § 78bb(f)(1), which provides as follows:

15 U.S.C. § 78bb
(f) Limitations on Remedies
(1) Class Action Limitations No covered class action based upon
the statutory or common law of any State or subdivision thereof may
be maintained in any State or Federal court by any private party
alleging—
(A) a misrepresentation or omission of a material fact in connection
with the purchase or sale of a covered security; or
(B) that the defendant used or employed any manipulative or
deceptive device or contrivance in connection with the purchase or
sale of a covered security.[8]

Thus, in order for a case to be a "covered class action" subject to preclusion,

SLUSA expressly requires allegations of fraud: "a misrepresentation or omission of

a material fact," or a "manipulative or deceptive device or contrivance" in

---

[8]    This language that Congress chose for SLUSA subsections (A) and (B)
roughly tracks the language it used in Section 10(b) of the Securities Exchange Act
of 1934:

> 15 U.S.C. § 78j - Manipulative and deceptive devices
> It shall be unlawful . . .
> (b)To use or employ, in connection with the purchase or sale of any
> security registered on a national securities exchange or any security not
> so registered, or any securities-based swap agreement any manipulative
> or deceptive device or contrivance in contravention of such rules and
> regulations as the Commission may prescribe as necessary or
> appropriate in the public interest or for the protection of investors.

This legislative decision is significant because Section 10(b) is, of course, a fraud
statute; it has nothing to do with state law fiduciary duty claims. In contrast to the
federal securities laws, which are built around the law of fraud and deceit, the
fiduciary duties at issue here have as their foundation the law of agency and trusts.
*See Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042, 1049 (11th Cir. 1987)
(citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-215 (1976) and Restatement
(2d) of Agency §§ 387-398, *inter alia*).

-12-

connection with the purchase or sale of a covered security. 15 U.S.C. § 78bb(f)(i)(A) and (B). Courts must give these words and that requirement their plain meaning. *See, e.g.*, *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001) (describing the "first canon" of statutory construction as to apply the unambiguous meaning of a statute). And, at the motion to dismiss stage, courts must accept the allegations in the Complaint as true. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007); *Wilchombe v. TeeVee Toons, Inc.,* 555 F.3d 949, 959 (11th Cir. 2009).

The District Court did neither of these things. Mr. Cochran does not allege a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security, and the District Court specifically noted that reality. Doc. 57 at 11 (recognizing that Mr. Cochran does "not use the terms misrepresentation or omission . . ."). Instead of looking to Mr. Cochran's actual allegations and accepting them, the District Court chose to divine that the "core of his Complaint" involves "some type of misrepresentation or omission related to what HTK stated or did not state[.]" *Id*. But what exactly is "some type" of misrepresentation? Were this a fraud case facing a Rule 9(b) motion to dismiss, the Court would not look beyond the complaint's actual allegations for the benefit of the plaintiff to find that the complaint's true core was "some type" of fraud and deny the motion. *See, e.g., Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) ("a party must

state with particularity the circumstances constituting fraud or mistake.") (quoting Fed. R. Civ. P. 9(b)).

Just so here, the Court cannot comb through Mr. Cochran's complaint, which expressly does not allege any misrepresentation or omission, and find what the Court believes is really the "core of his Complaint." Doc. 57 at 11. District courts are not empowered to rewrite complaints to create an allegation of a misrepresentation or an omission when none exists. *Cf. Bilal v. Geo Care, LLC*, No. 16-11722, 2020 WL 6864637, at *5 (11th Cir. Nov. 23, 2020) (noting that the court's role is not to rewrite a plaintiff's complaint; even in *pro se* cases, the court "cannot act as *de facto* counsel or rewrite an otherwise deficient pleading to sustain an action."). If a district court cannot rewrite a complaint to assist even a *pro se* plaintiff, it certainly cannot do so here in order to aid well-represented, well-funded corporate defendants and rationalize a finding that a claim fits within the parameters of a strictly defined federal statute.

Mr. Cochran intentionally and carefully pled a Georgia state law breach of fiduciary duty claim as that claim is set out in *Holmes v. Grubman*. *See generally* Section D, *infra*. The gravamen of Plaintiff's claim is not some type of misrepresentation or omission; none is required to show that HTK breached its fiduciary duty to Mr. Cochran. It is the self-dealing that HTK and Penn Mutual engaged in by selling a product that placed their financial interests above those of

-14-

clients like Mr. Cochran that breached the duty. Plaintiff's claim for breach of fiduciary duty is neither furthered nor strengthened by any allegations that HTK did or should have disclosed it was breaching that duty by placing Mr. Cochran in the product HTK ultimately sold to him. It is HTK's actions putting its interests above those of its client, not what it said or did not say, that is the gravamen of the claim.

Congress did not authorize district courts to rewrite complaints to create an allegation of a misrepresentation or an omission when none exists, and neither has this or any other Court. The District Court should have read the Complaint and accepted as true the allegations stating a breach of fiduciary claim under state law, a claim which does not depend on a misrepresentation or omission.  Instead, the District Court went far beyond what Congress authorized and beyond the scope of Rule 12, and therefore should be reversed.

### B. <u>The District Court's Finding of Preclusion Deviates from Binding Precedent and Other Authority Within This Circuit</u>

Under Georgia law, a brokerage firm owes fiduciary duties to its customers. *Holmes v. Grubman*, 286 Ga. 636, 643 (2010).  "Actions contrary to the duties of loyalty and care are remedied by giving the beneficiary of the relationship the right to recover for the fiduciary's breach." *Gochnauer*, 810 F.2d at 1049.

"Fraud is not the same as breach of fiduciary duty."  *Id*.  In *Gochnauer*, this Court explained at length the differences between the federal and state securities laws.  *See generally* 810 F.2d at 1046-50.  In contrast to the federal securities laws,

-15-

which are built around the law of fraud and deceit, the fiduciary duties at issue here have as their foundation the law of agency and trusts. *See Gochnauer*, 810 F.2d at 1049 (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-215 (1976) and Restatement (2d) of Agency §§ 387-398, *inter alia*); *see also Brink v. Raymond James & Associates, Inc*., 892 F.3d 1142, 1145-46 (11th Cir. 2018) (citing *Merrill Lynch v. Dabit*, 547 U.S. 71, 78 (2006)).

Not only are there important differences between the federal and state securities regulatory schemes, but the two were always meant to complement one another:

> The [*Santa Fe*] Court was reluctant to "federalize" fiduciary principles in the securities field "[a]bsent a clear indication of congressional intent." Since not every instance of financial unfairness or breach of fiduciary duty will constitute a fraudulent activity under Sec. 10(b) or Rule 10b-5, federal courts should be wary of foreclosing common law breach of fiduciary duty actions which supplement existing federal or state statutes.

*Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042, 1049 (11th Cir. 1987) (citing *Santa Fe Indus. v. Green*, 430 U.S. 462, 479, 97 S. Ct. 1292, 1304 (1977)).

"As the Supreme Court's decision in *Santa Fe* made clear, the securities fraud statutes do not co-opt the existence of separate claims under state fiduciary principles. The common law of fiduciary obligation is still intact, and appellees' case law arguments based on fraud are simply inapposite here." *Gochnauer,* 810 F.2d at 1050.

-16-

This case presents the question of whether this is still true – whether the "common law of fiduciary obligation is still intact" and *Gochnauer* and *Santa Fe* are still good law, or whether those cases stand for an antiquated notion: that state law still has a role to play in this country's system of securities regulation. The District Court's Order essentially treats SLUSA as a Congressional repeal of these cases' holdings, one that authorizes district courts to recast a complaint's allegations in order to do precisely what these two cases took pains to avoid: to "federalize" state law claims for breach of fiduciary duty. As noted above, Congress has done no such thing. SLUSA applies to preclude state law claims only in cases with allegations of "a misrepresentation or omission of a material fact in connection with the purchase or sale of covered security[.]" 15 U.S.C. § 78bb(f)(i)(A).

Below, the District Court did at least acknowledge that no Eleventh Circuit authority is directly on point so as to mandate dismissal. (Doc. 57 at 13.) Nonetheless, the District Court analogized Cochran's allegations to those in *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1089 (11th Cir. 2002), to find a preclusion of the fiduciary duty claim, concluding that "HTK's representations are not irrelevant" to the claim. (Doc. 57 at 14.) In so doing, not only did the District Court casually discard the Amended Complaint's disclaimer that Mr. Cochran "does not challenge the disclosures at issue here," (Doc. 27 at 3, ¶ 3), but it also took the drastic step of

-17-

precluding any fiduciary duty claim based upon a brokerage firm's "advice, assistance, and recommendations." (Doc. 57 at 10.)

This was unwarranted and, ultimately, reversible error. To begin with, the "relevance" of a brokerage firm's representations to a fiduciary duty claim is not controlling. It has long been patent that "[f]raud is not the same as breach of fiduciary duty."[9] Even where there may be some incidental overlap, the claims are intended to address different problems, and they have different elements. *See generally Gochnauer* 810 F.2d at 1048-50. As a consequence, "[s]ince not every instance of financial unfairness or breach of fiduciary duty will constitute a fraudulent activity under [federal securities laws], federal courts should be wary of foreclosing common law breach of fiduciary duty actions which supplement existing federal or state statutes." *Id.* at 1049; *see also Roland v. Green*, 675 F.3d 503, 518 (5th Cir. 2012) (quoting *Gochnauer* in the context of analyzing SLUSA preclusion), *aff'd sub nom. Chadbourne & Parke LLP v. Troice*, 571 U.S. 377 (2014). This remains true even though obligations to refrain from self-dealing (and even to refrain from misrepresenting material facts) might be enmeshed with fiduciary duties of loyalty.

---

[9] *Gochnauer*, 810 F.2d at 1048-49 ("*Santa Fe* concerned the unanswered but related question whether the term 'fraud' in Sec. 10(b) and Rule 10b-5 was coextensive with 'all breaches of fiduciary duty in connection with a securities transaction.' The [*Santa Fe*] Court answered this question in the negative. Chief among its concerns was a disinclination to 'federalize' the fiduciary principles which protect investors under state law.") (citations omitted).

*See Gochnauer*, 810 F.2d at 1049; *Banc of Am. Sec. LLC v. Stott*, 04-81086-CIV, 2005 WL 8156027, at *4 (S.D. Fla. Aug. 30, 2005) (citing *Gochnauer* to find adequately alleged claims for breach of fiduciary duty).

In other words, it is common for a brokerage firm's representations to a client to be "relevant," without transforming every firmly-entrenched fiduciary duty into a precluded claim. *See Norman v. Salomon Smith Barney, Inc*., 350 F. Supp. 2d 382, 386-88 (S.D.N.Y. 2004) ("The fact that the actions underlying the alleged breach could also form the factual predicate for a securities fraud action by different plaintiffs cannot magically transform every dispute between broker-dealers and their customers into a federal securities claim[.]"); *accord Antietam Indus., Inc. v. Morgan Keegan & Co., Inc*., 6:12-CV-1250-ORL-36, 2013 WL 1213059, at *5 (M.D. Fla. Mar. 25, 2013) ("The notion that a broker should properly explain the risk of an investment is certainly not a novel one, as the Eleventh Circuit has recognized that a broker has a fiduciary ***duty to inform*** the investor of the risks involved in purchasing or selling securities.") (citing *Gochnauer*); *Florida Auto. Joint Underwriting Ass'n v. Milliman, Inc.*, 4:06-CV-00546-SPM-WCS, 2007 WL 9735054, at *3 (N.D. Fla. Feb. 15, 2007) ("The Restatement Second of Agency … says that agents employed to make, manage, or ***advise*** on investments have fiduciary obligation") (citations omitted and emphasis supplied). The District Court's "relevance" analysis would obliterate entirely any fiduciary duty claim (under the

laws of Georgia or any other state) stemming from advice and recommendation in connection with the sale of securities, something that neither Congress nor this Court have authorized.

The District Court's analysis was especially unwarranted here, where (1) Mr. Cochran did not challenge Defendants' disclosures, because (2) a plaintiff need not allege a material misrepresentation to sustain a breach of fiduciary duty claim under Georgia law. *See, e.g., Griffin v. Fowler*, 260 Ga. App. 443, 445, 579 S.E.2d 848 (2003) (In Georgia, "a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach."). This should take such claims out of the SLUSA preclusion realm altogether. *See McEachern v. Equitable Life Assurance*, 2001 WL 747320 at \*2 (N.D. Ala. June 15, 2001) ("SLUSA does not cover allegations which do not have as a necessary component misrepresentation, untrue statements, or omissions of material facts.").[10] Rather, consistent with the approach set forth in *Gochnauer,* state law claims such as those alleging breaches of fiduciary duty should "rise and fall independently of the federal claims." *See Whitehead v. BBVA Compass Bank*, 2:18-CV-01130-AKK, 2019 WL 1376712, at

---

[10] *See also Norman*, 350 F. Supp. 2d at 386-88 (rejecting preemption argument where "[t]he claims at issue are for breach of contract and breach of fiduciary duty, neither of which has fraud or misrepresentation as an element. . . .").

*8 (N.D. Ala. Mar. 27, 2019) ("[T]he Supreme Court [has] made clear [that] the securities fraud statutes do not co-opt the existence of separate claims under state fiduciary principles.") (*quoting Gochnauer*), *aff'd*, 979 F.3d 1327 (11th Cir. 2020).

*Behlen* is materially different and does not require a different result. Unlike Mr. Cochran, that plaintiff "specifically alleged that the defendants 'negligently, recklessly or intentionally misrepresented'" material facts. *Behlen*, 311 F.3d at 1094. With that backdrop, this Court had no trouble discerning that "the crux of the complaint was that the defendants either misrepresented or omitted crucial facts." *Id*. The Amended Complaint here in contrast contains no such allegations. Rather, the Amended Complaint specifically says: "Plaintiff does not challenge the disclosures at issue here, but instead alleges that this practice is a breach of the fiduciary duties that brokerage firms owe to their customers under Georgia law." (Doc. 27 at 3, ¶ 3.) Brushing aside this disclaimer, the District Court intuited that the Amended Complaint must necessarily have alleged that Defendants "misrepresent[ed] their suitability for tax-deferred retirement plans" and failed "to disclose their unsuitability for such accounts." (Doc. 57 at 14.) Instead of straining to find that HTK's representations might be "relevant" so as to trigger preclusion, the District Court should have declined to allow the Defendants to "effectively [rewrite] the claims pled in this case." *Gwin v. Nationwide Life Ins. Co.*, 2008 WL 8945610 at *5 (N.D. Ala., Apr. 15, 2008) ("Lying about or hiding Defendants'

conflicts of interest . . . would neither change their fiduciary duties nor alter the conduct Plaintiffs allege breached those duties"). Equally importantly, this Court in *Behlen* undertook no analysis of the breach of fiduciary duty claim; in light of the principles of *Gochnauer* discussed above, its application should be of limited force here.

Finally, the District Court's emphasis on the bare relevance of theoretical allegations of misrepresentations to a fiduciary duty claim glosses over the question of whether any such misrepresentation would have been material for preclusion purposes. "SLUSA's 'in connection with' requirement mandates that the purportedly fraudulent conduct 'coincide with' a securities transaction in a material, non-tangential way." *Seminole Tribe of Florida v. Wells Fargo Bank, N.A*., 16-60414-CIV-WPD, 2016 WL 4433651, at \*3 (S.D. Fla. May 31, 2016). This Court has been wary of construing materiality too broadly. *See Brink*, 892 F.3d at 1148-49 ("the choice of a type of investment account, much like the choice of a broker-dealer, is not intrinsic to the investment decision itself"). Here, bad investment advice on the front end of the transaction surely occurred. But it is almost beside the point – Mr. Cochran alleges that no disclosure can cure the breach of the fiduciary duty. (Doc. 27 at 3, ¶ 3.) Like the plaintiff in *Brink*, Mr. Cochran does not allege that he was ever "charged more than [he] agreed to pay." *Brink*, 892 F.3d at 1149. And it did not matter to Mr. Cochran who reaped the fees for a product that

he did not need. *See id.* (finding no "reasonable investor would have made different investment decisions had she known that some of the Processing Fee…***included profit for RJA*** instead of merely covering the transaction execution and clearing costs.") (emphasis supplied); *see also Seminole Tribe*, 2016 WL 4433651, at *3 ("A fraudulent misrepresentation or omission is not made 'in connection with' such a 'purchase or sale of a covered security' ***unless it is material to a decision by one or more individuals (other than the fraudster***) to buy or to sell a 'covered security.'") (emphasis supplied). It only matters to Mr. Cochran that his fiduciary put him in a product he did not need.

In conclusion, since *Behlen*, this Circuit and its district courts have continually upheld the viability of state law fiduciary duty claims, and this Court has only imposed preclusion after a careful examination of whether any misrepresentations were material. The District Court erred by straying from these principles, doing so in a case that did not even allege misrepresentation or require it as an element to Plaintiff's claim.

## C. <u>The District Court Decision is Contrary to SLUSA Precedents from Other Circuits</u>

In order for a claim to be precluded, it must allege a material misrepresentation or omission. How is a district court to determine whether a complaint alleges a material misrepresentation or omission? Circuit Courts of Appeal have split three

ways on this question.[11] Unfortunately, the decision of the District Court below correctly applied none of the various Circuit answers to this question. Instead, its broad ruling eliminated all state breach of fiduciary duty claims by mistakenly pulling them into SLUSA's ambit.

The first group of courts takes a "literalist" approach, looking at the plain language of the complaint; if a complaint alleges a misrepresentation the claim is precluded. This was the approach of the Fifth Circuit in *Miller v. Nationwide Life Ins. Co*., 391 F.3d 698, 702 (5th Cir. 2004) ("The issue of preemption thus hinges on the content of the allegations."), the Sixth Circuit in *Atkinson v. Morgan Asset Management, Inc*., 658 F.3d 549, 554-55 (6th Cir. 2011) ("[SLUSA] asks whether the complaint includes [allegations of misrepresentation] pure and simple[,]" *citing Segal v. Fifth Third Bank, N.A*., 581 F.3d 305, 311 (6th Cir. 2009), *cert. denied* 560 U.S 925, 130 S. Ct. 3326, 176 L. Ed. 2d 1221 (2010)), and the Eighth Circuit in *Dudek v. Prudential Sec., Inc*., 295 F. 3d 875, 880 (8th Cir. 2002). Where the complaint did not allege a misrepresentation, however, *Dudek* looked beyond the allegations to the "substance" of the complaint, attempting to discern the real intent of the plaintiff. *Dudek*, 295 F.3d at 880.

---

[11] These Circuit divisions were surveyed and explained in *Brown v. Calamos,* 664 F.3d 123, (7th Cir. 2011) and in both the concurring and dissenting opinions in *Goldberg v. Bank of America, N.A.,* 846 F. 3d 913, 918, 923 (7th Cir. 2017).

The Seventh Circuit has adopted another framework. For example, *Brown v. Calamos*, 664 F. 3d 123, 128-129 (7th Cir. 2011), required a court to look at the complaint and predict whether "it is likely that an issue of fraud will arise in the course of the litigation." This has been described as an "intermediate approach," and expanded on by that Circuit in two recent decisions, *Goldberg v. Bank of America, N.A.,* 846 F. 3d 913, 918, 923 (7th Cir. 2017), and *Holtz v. JPMorgan Chase Bank, N.A.*, 846 F. 3d 928, 30 (7th Cir. 2017).

Under the third approach, according to the Second, Third and Ninth Circuits, a class action claim is precluded and barred only if the claim requires proof of a misrepresentation or omission of a material fact. *See, In re Kingate Mgmt. Ltd. Lit*., 784 F.3d 128, 151-52 (2d Cir. 2015); *Freeman Investments, L.P. v. Pacific Life Ins. Co*., 704 F.3d 1110 (9th Cir. 2013); and *LaSala v. Bordier et Cie*, 519 F.3d 121, 141 (3d Cir. 2008).

In *Freeman*, then Chief Judge Kozinski explained the court's reasoning that preclusion should turn on what the plaintiffs would be *required* to show to prove their claims:

> To succeed on this claim, plaintiffs need not show that Pacific misrepresented the cost of insurance or omitted critical details. They need only persuade the court that theirs is the better reading of the contract term. . . .
>
> Just as plaintiffs cannot avoid SLUSA through crafty pleading, defendants may not recast contract claims as fraud claims by arguing

that they "really" involve deception or misrepresentation. *Id.; see also Walling v. Beverly Enters.,* 476 F.2d 393, 397 (9th Cir. 1973) ("Not every breach of a stock sale agreement adds up to a violation of the securities law.").

704 F.3d at 1115-16.

Similarly, in *In re Kingate,* the Second Circuit ruled that SLUSA did not preclude claims for breaches of fiduciary duty because those claims did not *require* the plaintiffs to prove that the defendants had misrepresented or omitted material facts. 784 F.3d at 151–52.

In *LaSala,* the Third Circuit held that preclusion under SLUSA would not apply to breach of fiduciary duty claims unless the allegation of misrepresentation was a "factual predicate" for the claim. 519 F.3d at 141. "When one of a plaintiff's necessary facts is a misrepresentation, the plaintiff cannot avoid SLUSA by merely altering the legal theory that makes the misrepresentation actionable." *Id*. The Third Circuit was reiterating a principle laid out in *Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294, 300 (3d Cir. 2005).

Most recently, Judge Hamilton in dissent in *Goldberg* advocated that the Seventh Circuit  adopt the view of the Second, Third, and Ninth Circuits, which allow class actions under state contract and fiduciary law where plaintiffs can prevail without proving the defendant engaged in deceptive misrepresentations or omissions, arguing that this approach would be consistent with the statutory text, be consistent with Congress's intent in SLUSA to protect federalism interests, and set

an easy to administer standard that would not produce arbitrary results. 846 F. 3d at 921.

The District Court below applied none of these three approaches correctly. It did not properly look at the substance or "gravamen" of the Amended Complaint, as explained *supra*. It did not predict whether the issue of fraud would arise in the course of the litigation; it could not do so, as fraud is unrelated to Mr. Cochran's claim. Nor did it examine whether Mr. Cochran's claim required proof of misrepresentation. Had it done so it could not have precluded the claim, as no proof of misrepresentation or omission is required under Georgia law to establish the breach of fiduciary duty.

Instead, the District Court mashed together *LaSala* and *Dudek*, despite their distinct holdings, ignoring *LaSala's* conclusion while extensively quoting its "factual predicate" language:

> [W]hen an allegation of misrepresentation in connection with a securities trade, *implicit or explicit*, operates as a factual predicate to a legal claim, that ingredient is met. To be a factual predicate, the fact of a misrepresentation must be one that gives rise to liability, not merely an extraneous detail.

Doc. 57 at 9 (citing 151 F.3d at 141 and adding emphasis). While the District Court did not explain its reference to *LaSala's* factual predicate standard, no explicit allegation of misrepresentation exists in this action to provide that factual predicate.

Nor are there any implicit allegations of misrepresentation to serve as a factual predicate.

*Dudek* is not applicable to the facts in this action, either. In *Dudek* the plaintiffs filed an initial complaint alleging that defendants affirmatively misled them and engaged in deceptive and abusive practices. 295 F.3d at 879. The plaintiffs then filed a second complaint that their own attorneys characterized as "essentially the same action" with the allegations of fraud, misrepresentation, and non-disclosure removed. *Id*. The court held that in substance both complaints alleged misstatements or omissions.

Similarly, the District Court here assumed that "the essence of the Complaint is HTK's overall fraudulent practice of recommending variable annuities in order to make more money on fees and commissions." (Doc. 57 at 11) (comparing the case to *Dudek*). In doing so, the District Court substituted its view for that of both Plaintiff and Defendants. Defendants were no doubt surprised to learn that their practice was "fraudulent."

The District Court's conclusion is contrary to that of many district courts which have considered this issue when reviewing complaints involving variable annuities. In *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc*., 341 F. Supp. 2d 258, 268 (S.D.N.Y. 2004) (Scheindlin, J.) the court adopted what it called the "necessary component" test and explained it as follows:

Regardless of the words used by plaintiffs in their complaints and regardless of the labels they paste on each claim, the question is whether a material misstatement or omission in connection with the purchase or sale of a covered security is a necessary component of the claim.

. . . .

In sum, the "necessary component" test makes a good deal of sense. *First,* it provides a practical rule that is easily followed by courts assessing claims of SLUSA preemption. *Second,* it strikes the proper balance between respect for the way that plaintiff has pleaded her claims on the one hand, and for Congress's desire to ensure that all securities fraud claims are litigated in federal court and under federal law, on the other. Simply because the operative facts of a complaint *can* give rise to a claim of fraud does not mean that the complaint *must* be read as alleging fraud. To the contrary, a plaintiff is ordinarily free to choose the legal theories upon which she relies and to discard others. "Where the plaintiff's claim might be brought under either federal or state law, the plaintiff is normally free to ignore the federal question and rest his claim solely on the state ground." The choice of legal theories is a strategic choice to be made by plaintiff, and neither the court nor the defendant is permitted to override that choice.

*Id.* (emphasis in original; citations omitted). The *Xpedior* court specifically distinguished *Dudek* and *Behlen* in finding state law claims not precluded.

*Xpedior* relied on two earlier cases, including one from within this Circuit, to craft the "necessary component" test: *McEachern v. Equitable Life Assurance*, 2001 WL 747320, at *2 (N.D. Ala. June 15, 2001) ("SLUSA does not cover allegations which do not have as a necessary component misrepresentation, untrue statements, or omissions of material facts."), and *Hines v. ESC Strategic Funds, Inc*., 1999 WL 1702503 at *4-5 (M.D. Tenn. Sept. 17, 1999) (upholding state law claim for breach of fiduciary duty alleging a fund allowed charging of excessive fees, and finding

"[o]nly those allegations based on untrue statements or omissions of material facts … are preempted.").

In other variable annuities cases, courts have repeatedly rejected the standard that the District Court below adopted: that SLUSA should preclude state law claims for breach of fiduciary duties even where no allegations of misrepresentation or omission were pled. *See*, *e.g., Stephens v. Gentilello*, 853 F. Supp. 2d 462, 471 (D.N.J. 2012) "Any testimony by Plaintiffs as to misrepresentations are the sort of background details that need not have been alleged, and need not be proved, which the Third Circuit [in *LaSala*] has determined cannot serve as a basis for SLUSA removal").

"While this Court is mindful that plaintiff may not escape SLUSA preemption through artful pleading meant to disguise allegations of misstatements or omissions, it is similarly mindful that defendant may not recast plaintiff's Complaint as a securities fraud class action so as to have it preempted by SLUSA." *Paru v. Mutual of America Life Ins. Co.,* 2006 WL 1292828 at *3 (S.D.N.Y., May 11, 2006) (*citing MDCM Holdings, Inc. v. Credit Suisse First Boston Corp*., 216 F. Supp. 2d 251, 257 n. 12 (S.D.N.Y. 2002)), *overruled on other grounds by Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 332 F. 3d 116, 123 (2d Cir. 2003)). *See also, Grund v. Delaware Charter Guarantee and Trust Co*., 788 F. Supp. 2d 226, 242 (S.D.N.Y.

2011 ("[W]here claims of fraud or sounding in fraud are not raised by a plaintiff, court have been unwilling to apply SLUSA preclusion[,]"collecting cases)..

In *Paru*, the plaintiff alleged that Mutual of America had a fiduciary obligation to take certain measures to protect the long-term viability of the plaintiff's investments, failed to do so, and caused the plaintiff harm. *Id*. at *5. Mr. Cochran has alleged the same here in his Amended Complaint. *See* Doc. 27 at 26-28, 32, ¶¶ 56-58, 60, 72-74. "Even looking beyond the face of the Complaint to the substance of Plaintiff's allegations, it is clear that Plaintiff's claim is not based, either explicitly or implicitly, on any misstatements or omissions.  Therefore, Plaintiff's state law breach of fiduciary duty claim is not preempted by SLUSA." *Paru*, at *5. *See also Webster v. New York Life Ins. and Annuity Corp*., 386 F. Supp. 2d 438, 441-42 (S.D.N.Y. 2005) ("We do not believe plaintiffs have in fact alleged any misrepresentation by defendant. . . . [P]laintiffs have not described any circumstances that constitute misrepresentation. Defendant's argument is essentially an assertion that '[y]ou have to assume in any lawsuit there's a disputed truth, and if there's a disputed truth, then there is either an untrue statement or there is an omission of a material fact' . . . .  But while a contract dispute commonly involves a 'disputed truth' about the proper interpretation of the terms of a contract, that does not mean one party omitted a material fact by failing to anticipate, discover and disabuse the other of its contrary interpretation of a term in the contract."); *Norman*, 350 F. Supp.

2d at 386-88 ("The claims at issue are for breach of contract and breach of fiduciary duty, neither of which has fraud or misrepresentation as an element. . . . Plaintiffs' claim is simply that Salomon said it would do something in exchange for plaintiffs' fees, and then didn't do what it had promised. The fact that the actions underlying the alleged breach could also form the factual predicate for a securities fraud action by different plaintiffs cannot magically transform every dispute between broker-dealers and their customers into a federal securities claim—the mere 'involvement of securities [does] not implicate the anti-fraud provisions of the securities laws.'" (*quoting Spielman v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 01 Civ. 3013 (DLC), 2001 WL1182927 at *3 (S.D.N.Y., Oct. 9, 2001) *aff'd* 332 F.3d 1161 (2d Cir. 2003)).

Here, the District Court below wrongly recast Cochran's claim as one for misrepresentation or omission. Doc. 57 at 14. This was error. The District Court below held that allegations of a recommendation by a brokerage firm necessarily includes material misrepresentations or omissions. *Id*. This is not so. Nowhere does Plaintiff allege, or Defendants admit, that any recommendation or statement by HTK was false. Mr. Cochran has alleged no misrepresentations or omissions, and he does not need to in order to prove his case. Therefore, his claim for breach of fiduciary duty is not precluded under SLUSA, and the decision below must be reversed.

**D. The District Court's Order Nullifies the Georgia Supreme Court's Holding in *Holmes v. Grubman***

In *Holmes v. Grubman*, the Georgia Supreme Court considered the following certified question from the Second Circuit: "Under Georgia law, does a brokerage firm owe a fiduciary duty to the holder of a non-discretionary account?" A unanimous Georgia Supreme Court answered in the affirmative, concluding that "[t]he broker will generally have a heightened duty, even to the holder of a non-discretionary account, *when recommending an investment* which the holder has previously rejected or *as to which the broker has a conflict of interest*." 286 Ga. at 643 (emphasis added).

HTK's practice of selling Penn Mutual variable annuities to its clients who are investing tax-qualified funds constitutes just such a conflict of interest, and the practice cannot pass muster when held up to a fiduciary standard. This straightforward conflict is at the heart of the case and is exacerbated by Penn Mutual's complete ownership and control of HTK as its "captive" broker-dealer. Doc. 27 at 10-11, ¶ 17, 22 ("The captive structure Penn Mutual chose to embrace is rife with potential for self-dealing and other conflicts of interest.").[12]  Brokers and

_____

[12]    The conflict at issue in *Holmes* was far more attenuated than the conflict at issue in this case. There, the brokerage firm allegedly gave bad advice to its customer (*i.e.*, recommended that he not sell his WorldCom shares) "in order to retain WorldCom's lucrative investment banking business." 286 Ga. at 636. The conflict at issue in this case is much clearer and much more pronounced. Not only do

brokerage firms like to sell variable annuities to their customers because the high fees result in greater compensation; those same high fees, however, make variable annuities a bad investment from the customer's standpoint. Doc. 27 at 4, ¶ 6

As noted above, a fiduciary has a duty to put the interests of his client ahead of his own. When presented with a conflict situation like this one, where an investment transaction is good for the fiduciary but bad for the client, a responsible fiduciary must take the client's side. HTK, however, has chosen self-dealing instead, responding to the conflict in a manner that it could more easily profit at the expense of Mr. Cochran and the entire class of beneficiaries, putting its own interests ahead

---

Defendants have a conflict, they have layers of conflicts stacked on top of each other. Not only are they self-dealing in the classic sense (*i.e.,* the fiduciary compromised its duty and gave bad advice so that it could line its own pockets at the beneficiary's expense) but also in the sense that the captive broker-dealer structure results in HTK/Penn Mutual being on both the recommendation side and the product side of the transaction.

Moreover, this is a conflict that no amount of disclosure can cure. When you have a self-dealing fiduciary, disclosure of the conflict and consent are simply not good enough. The transaction has to be fair to the beneficiary, and the burden is on the fiduciary to prove it. *See Mathis v. Hammond*, 268 Ga. 158, 161 (1997) ("in every transaction between them, by which the superior party obtains a possible benefit, equity raises a presumption of undue influence, and casts upon that party the burden of proof to show affirmatively his compliance with equitable requisites and of entire fairness on his part") (quoting *Trustees of Jesse Parker Williams Hosp. v. Nisbet*, 191 Ga. 821, 841 (1941)); Restatement (3rd) of Agency § 8.06(2) ("An agent who acts for more than one principal in a transaction between or among them has a duty . . . to deal fairly with each principal."). *See generally* Doc. 53-4 at 4-5.

of its clients' interests and violating its duties under *Holmes* in the process. *E.g.,* Doc. 27 at 4, ¶ 5.

This common law claim for breach of fiduciary duty, as outlined by the Georgia Supreme Court in *Holmes*, is the gravamen of the Complaint. Brokerage firms such as HTK do not like to think of themselves as fiduciaries, and they certainly do not act like fiduciaries. Yet there it is, in black and white: a brokerage firm owes its customers nothing less than the utmost good faith. *Holmes*, 286 Ga. at 643 (applying O.C.G.A. § 23-2-58's "utmost good faith" standard).[13]

So the gist of the Complaint is that if brokerage firms are fiduciaries under Georgia law, then they must act like fiduciaries. The District Court, however, seizes on the fact that the Complaint includes repeated references to HTK's investment recommendations. Doc. 57 at 10-11. According to the District Court, Mr. Cochran's "references to HTK's advice and recommendations reveal the core of his Complaint:

---

[13]    This is hardly a novel proposition, and it is by no means limited to the *Holmes* opinion. A special relationship of trust and confidence exists between a brokerage firm and its customer, one that demands "the utmost good faith." Georgia courts have expressly characterized that relationship as fiduciary in nature, as has this Court. *See, e.g.*, *Holmes*, 286 Ga. at 643 (citing earlier Georgia cases); *Gochnauer*, 810 F.2d at 1049 ("The law is clear that a broker owes a fiduciary duty of care and loyalty to a securities investor.") (citing Restatement (2d) of Agency § 425, *inter alia*). *See also* Loss, Securities Regulation 1508 (2d Ed. 1961) ("There is in effect and in law a fiduciary relationship"); 5C Jacobs, Litigation and Practice Under Rule 10b-5 §210.03 (1994) ("Brokers owe a fiduciary duty to their customers"); Restatement (2d) of Agency § 13 ("A broker-dealer acting as an agent for his customer is a fiduciary with respect to matters within the scope of his agency").

-35-

some type of misrepresentation or omission related to what HTK stated or did not state when providing recommendations and advice." Doc. 57 at 11.

But this is no revelation at all. Far from "reveal[ing]" anything about the hidden nature of Mr. Cochran's claims, the Complaint references HTK's investment recommendations because that is precisely the conflict identified by the *Holmes* court that gives rise to the heightened fiduciary duty: "*recommending an investment ... as to which the broker has a conflict of interest*." *Holmes,* 286 Ga. at 643 (emphasis added). If the District Court's reasoning is correct, then there is no way to state this claim outlined by the *Holmes* court on behalf of a class; one simply cannot get there without a recommendation, and SLUSA would preclude that recommendation every time.[14] According to the District Court, the Georgia Supreme Court and the Second Circuit should have saved their breath, because Georgia law cannot matter.

Not only that, but the District Court's holding means that a brokerage firm can have no duty whatsoever short of fraud -- under Georgia law or that of any other state -- when providing recommendations or advice, because doing so necessarily involves "some type of misrepresentation or omission related to what [the brokerage

---

[14]    Just as the fiduciary duties outline by the *Holmes* court reside at the firm level, this "recommendation" comes at the firm level and does not depend on individual discussions or circumstances. *Holmes,* 286 Ga. at 643.

firm] stated or did not state when providing recommendations and advice." Doc. 57 at 11. By that reasoning, SLUSA would preclude every state law that attempts to impose such a duty. One need look no further than the plain language of the SLUSA statute, however, to see that this was never Congress' intent. *See* Section A, *supra*.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Appellant respectfully requests that the Court reverse the Order of the District Court, remand this action for further proceedings, and grant to Appellant such other and further relief as may be justified under the circumstances.

Dated: December 7, 2020                     Respectfully submitted,

                                            By: /s/ *David A. Bain*
                                            David A. Bain
                                            Georgia Bar No. 032449
                                            LAW OFFICES OF DAVID A. BAIN, LLC
                                            1230 Peachtree Street, NE
                                            Suite 1050
                                            Atlanta, GA  30309
                                            (404) 724-9990
                                            (404) 724-9986 (fax)
                                            dbain@bain-law.com

                                            James M. Evangelista
                                            David J. Worley
                                            Kristi Stahnke McGregor
                                            EVANGELISTA WORLEY LLC
                                            8100A Roswell Road, Suite 100
                                            Atlanta, GA 30350
                                            (404) 205-8400
                                            (404) 205-8395 (fax)
                                            jim@ewlawllc.com
                                            david@ewlawllc.com
                                            kristi@ewlawllc.com

                                            Michael L. McGlamry
                                            Georgia Bar No. 492515
                                            Jay Hirsch
                                            Georgia Bar No. 357185
                                            Kimberly J. Johnson
                                            Georgia Bar No. 68778
                                            POPE McGLAMRY, P.C.
                                            3391 Peachtree Road, NE, Suite 300
                                            Atlanta, GA 30326
                                            (404) 523-7706
                                            (404) 534-1648 (fax)
                                            efile@pmkm.com

Wade H. Tomlinson, III
Georgia Bar No. 714605
Michael Morrill
Georgia Bar No. 545410
POPE McGLAMRY, P.C.
1200 6th Avenue
Columbus, GA 31901
(706) 324-0050
(706) 327-1536 (fax)
efile@pmkim.com

Roy E. Barnes
Georgia Bar No. 039000
J. Cameron Tribble
Georgia Bar No. 754759
BARNES LAW GROUP, LLC
31 Atlanta Street
Marietta, GA 30060
(770) 227-6375
(770) 227-6373 (fax)
roy@barneslawgroup.com
ctribble@barneslawgroup.com

*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitations of both Fed. R. App. P. 27(d)(2)(A) and Fed. R. App. P. 32(a)(7) because this brief contains 9,224 words, excluding the items that may be exempted under Fed. R. App. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared with a minimum font size of 14 point Times New Roman, a proportionally spaced font, using Microsoft Office Word 2010.

This 7th day of December, 2020.

*/s/ David A. Bain*
David A. Bain
Law Offices of David A. Bain, LLC

*Counsel for Appellant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 7, 2020, the foregoing **INITIAL BRIEF OF APPELLANT JEFFREY A. COCHRAN** was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit. Per the Eleventh Circuit's ECF Guide, Section 7, service upon Respondents' counsel of record will be completed by the ECF system's automatic email notice to the following:

Joshua P. Gunnemann
Stephen D. Councill
Councill & Gunnemann, LLC
1201 Peachtree Street, NE, Suite 100
Atlanta, GA 30361

Marc J. Sonnenfeld
John P. Lavelle, Jr.
Laura Hughes McNally
Morgan Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103-2921

Michael E. Kenneally
Morgan, Lewis & Bockius, LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004

This 7th day of December, 2020.

*/s/ David A. Bain*
David A. Bain
Georgia Bar No. 032449
LAW OFFICES OF DAVID A. BAIN, LLC
1230 Peachtree Street, NE
Suite 1050
Atlanta, GA 30309
(404) 724-9990
(404) 724-9986 (fax)
dbain@bain-law.com

-41-